```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                    EASTERN DISTRICT OF OKLAHOMA
```

WYNDMARA LEA ADAMS,            )
                               )
            Plaintiff,         )
                               )
v.                             )    Case No. CIV-13-307-RAW-KEW
                               )
CAROLYN W. COLVIN, Acting      )
Commissioner of Social         )
Security Administration,       )
                               )
            Defendant.         )

## REPORT AND RECOMMENDATION

Plaintiff Wyndmara Lea Adams (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. <u>Hawkins v. Chater</u>, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* <u>Williams v. Bowen</u>, 844 F.2d 748, 750-51 (10th Cir. 1988).

2

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on March 25, 1985 and was 27 years old at the time of the ALJ's decision. Claimant completed her high school education with special education classes. Claimant has worked in the past as a waitress and cashier in the fast food industry. Claimant alleges an inability to work beginning March 1, 2010 due to limitations resulting from attention deficit disorder, substance abuse, depression, anxiety, rectocele, and cystocele.

**Procedural History**

On June 10, 2010, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On November 18, 2011, an administrative hearing was held before Administrative Law Judge ("ALJ") Trace Baldwin. A supplemental hearing was conducted on April 10, 2010. On June 15, 2012, the ALJ issued an unfavorable decision on Claimant's application. The Appeals Council denied review of the ALJ's decision on May 20, 2013. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, she retained the RFC to perform a range of sedentary work with limitations.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination; and (2) finding other jobs were available which Claimant could perform at step five.

**RFC Determination**

In his decision, the ALJ determined Claimant suffered from the severe impairments of rectocele, cystocele, low back pain (musculoskeletal in origin), affective disorder, anxiety-related disorder, and organic mental disorder. (Tr. 12). The ALJ also found Claimant retained the RFC to perform a range of sedentary work. In so doing, the ALJ determined Claimant could occasionally lift/carry 10 pounds and frequently lift/carry up to 10 pounds, stand and/or walk for up to two hours in an 8 hour workday, and sit for at least 6 hours in an 8 hour workday. He found Claimant could occasionally push/pull and operate hand/foot controls, occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolding, occasionally balance, kneel, crouch, and crawl, and never work at unprotected heights, around moving mechanical parts, etc. Due to psychologically based factors, the ALJ found Claimant could perform simple and some complex tasks with routine supervision, could relate to co-workers and supervisors on a superficial work basis, and could adapt to a work situation. (Tr. 15). After consultation with a vocational expert, the ALJ found Claimant could perform the representative jobs of final assembler, document preparer, and touch up screener which the vocational expert testified existed in sufficient numbers in the regional and national economies. (Tr. 22).

Claimant contends the ALJ erred in his RFC assessment. Within this broad assertion of error, Claimant has included numerous sub-arguments. Claimant initially states the ALJ failed to adequately develop the record. Claimant contends she has a history of a cystocele and a rectocele but that none of the consultative examiners conducted an examination of these conditions. Additionally, Claimant states that the ALJ should have obtained the records of Dr. James Cheshier who allegedly treated the condition. Claimants own application for benefits, however, demonstrates that Dr. Cheshier treated Claimant between 1992 and 1995 - well outside of the relevant period and predating the birth of Claimant's child in 2007 which precipitated her condition. (Tr. 179). These records were entirely irrelevant to the ALJ's determination and he was not obligated to obtain them.

Claimant also states the ALJ should have obtained the records from St. John's Home Health Care in 2009 where she was allegedly treated for the condition. The record indicates the Commissioner attempted to obtain these records from February 15, 2009 as indicated by Claimant but that St. John's Home Health Care responded that no such records were found. Even by Claimant's account, St. John's physician gave Claimant a stool softener and told her to come back if the condition worsened. (Tr. 180). This

conservative treatment hardly represents a limitation upon Claimant's ability to engage in basic work activities.

Claimant also contends that the ALJ improperly relied upon a nurse practitioner, Lacey Conaway, in "discrediting" the diagnosis of a rectocele or cystocele. While the record does contain Ms. Conaway's gynecological examination and finding of no rectocele or cystocele (Tr. 293-94), the ALJ's decision does not reference this report. Indeed, the ALJ found these conditions to be severe impairments. (Tr. 12). Therefore, it is not apparent that the ALJ relied upon Ms. Conaway's report for any purpose. He did methodically review the treatment evidence to arrive at the conclusion that Claimant had only received the treatment of a stool softener and no other medical intervention. (Tr. 17-18).

Claimant asserts that her financial inability to pay for a surgery formed the basis for more aggressive treatment. However, the record does not indicate that surgery was recommended by any treating physician. The Tenth Circuit developed a four-part test to assess a claimant's failure to pursue treatment: (1) whether treatment would have restored the claimant's ability to work; (2) whether treatment was prescribed; (3) whether treatment was refused; and (4) whether the excuse was justified. Frey v. Bowen, 816 F.2d 508, 517 (10th Cir. 1987). The record does not contain

7

evidence of any of these elements. As a result, Claimant's assertion that she could not pay for further treatment cannot form the basis for rejecting the ALJ's reliance upon Claimant's conservative treatment.

Claimant argues that the ALJ should have ordered a consultative examination of these conditions. Generally, the burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability. Branam v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004) citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987). A social security disability hearing is nonadversarial, however, and the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." Id. quoting Henrie v. United States Dep't of Health & Human Services, 13 F.3d 359, 360-61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." Id. quoting Carter v. Chater, 73 F.3d 1019, 1022 (10th Cir. 1996). This duty exists even when a claimant is represented by counsel. Baca v. Dept. of Health & Human Services, 5 F.3d 476, 480 (10th Cir. 1993). The court, however, is

not required to act as a claimant's advocate. <u>Henrie</u>, 13 F.3d at 361.

The duty to develop the record extends to ordering consultative examinations and testing where required. Consultative examinations are used to "secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or prognosis necessary for decision." 20 C.F.R. § 416.919a(2). Normally, a consultative examination is required if

> (1) The additional evidence needed is not contained in the records of your medical sources;
>
> (2) The evidence that may have been available from your treating or other medical sources cannot be obtained for reasons beyond your control, . . .
>
> (3) Highly technical or specialized medical evidence that we need is not available from your treating or other medical sources;
>
> (4) A conflict, inconsistency, ambiguity or insufficiency in the evidence mus be resolved, and we are unable to do so by recontacting your medical source; or
>
> (5) There is an indication of a change in your condition that is likely to affect your ability to work.
>
> 20 C.F.R. § 416.909a(2)(b).

None of these bases for ordering a consultative examination for the conditions of rectocele or cystocele exists in the record. The ALJ presumed Claimant suffered from the conditions, found them to be severe impairments, but found that the treatment provided

9

contraindicated the degree of functional limitation urged by Claimant. (Tr. 18). This Court finds no error in the ALJ's decision in this regard.

Claimant next attacks the ALJ's failure to develop the record of her mental impairments. The ALJ sent Claimant for a consultative mental examination by Dr. Denise LaGrand. Dr. LaGrand indicated in a December 14, 2011 report that she performed a Beck Depression Inventory and Beck Anxiety Inventory. She did not administer these tests and corrected the error in a subsequent amended report. She also incorrectly calculated Claimant's IQ at 78 when she later corrected it to an 82. The correction of her reports in no way invalidates them as suggested by Claimant. Claimant appears to argue that if a mistake is found in a report, a new consultative examination is mandated for a "fresh start." Nothing in the regulations or case authority requires this.

Additionally, Claimant contends Dr. LaGrand did not have certain of her prior medical records for her evaluation. The ALJ indicated at the supplemental hearing that he would send the records to Dr. LaGrand. (Tr. 52). Dr. LaGrand specifically stated that she reviewed the medical evidence provided by the ALJ in response to an interrogatory. (Tr. 341). Nothing in the record provides support for Claimant's argument that Dr. LaGrand made her

10

findings without the medical records.

The remainder of Claimant's argument center upon the ALJ's reliance on the findings in the record that Claimant's mental condition had shown improvement. Claimant specifically relies upon the non-acceptable medical source of a counselor, Jeanne Jackson. The ALJ found Ms. Jackson's findings were not supported by the record. (Tr. 19). The focus of a disability determination is on the functional consequences of a condition, not the mere diagnosis. *See e.g.* Coleman v. Chater, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment.); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), Madrid v. Astrue, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(the diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work); Scull v. Apfel, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250, 1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition). Claimant has failed to meet her burden of establishing that her mental impairments limit her ability to engage in basic work activities beyond the restrictions placed upon

her work activity contained in the ALJ's RFC.

Claimant also states the ALJ failed to properly assess her credibility. It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc.

Sec. R. 96-7p; 1996 WL 374186, 3.

An ALJ cannot satisfy his obligation to gauge a claimant's credibility by merely making conclusory findings and must give reasons for the determination based upon specific evidence. Kepler, 68 F.3d at 391. However, it must also be noted that the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).

The ALJ satisfactorily tied his conclusions on credibility to the medical record. This Court finds no error in his analysis.

**Step Five Analysis**

Claimant asserts the ALJ should have included the limitations previously identified in this Report in his hypothetical questioning of the vocational expert and, if he had done so, no jobs would exist that Claimant could perform. As stated, the ALJ did not err in failing to include these additional limitations in his RFC assessment. Consequently, no error is found in his hypothetical questioning at step five.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing

13

reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**.  The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief.  Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 28th day of August, 2014.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE